Argued and submitted January 28, affirmed September 15, 2004, petition for review denied January 25, 2005 (338 Or 16)

# Dennis BECKLIN,
*Petitioner,*

*v.*

# BOARD OF EXAMINERS FOR ENGINEERING AND LAND SURVEYING,
*Respondent.*

## A117586

97 P3d 1216

Walter L. Cauble argued the cause for petitioner. With him on the briefs was Schultz, Salisbury, Cauble & Dole.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Petitioner seeks judicial review of a final order of the Board of Examiners for Engineering and Land Surveying (board). In that order, the board determined that petitioner had engaged in the unauthorized practice of engineering and assessed a civil penalty of $1,000. On judicial review, petitioner raises both procedural and substantive challenges to the board's order. We affirm.

## I. BACKGROUND

We begin with an overview of the applicable statute and the relevant facts, which are not in dispute. Then, as necessary, we detail additional facts as we address petitioner's specific assignments of error.

### A. *The Statutory Scheme*

It is unlawful for a person to practice or offer to practice engineering unless the person is registered and has a valid certificate to do so. ORS 672.020; ORS 672.045. The "practice of engineering" is defined by statute:

> "(1)(a) 'Practice of engineering' or 'practice of professional engineering' means:
>
> "(A) Any professional service or creative work requiring engineering education, training and experience; and
>
> "(B) The application of special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, testimony, evaluation, planning, design and services during construction, manufacture or fabrication for the purpose of ensuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects."

ORS 672.005(1)(a). In addition, as pertinent here, ORS 672.007 provides that a person is considered to be "practicing or offering to practice engineering" if that person "[p]urports to be able to perform, or who does perform, any service or work which is defined by ORS 672.005 as the practice of engineering." ORS 672.007(1)(b), (c).

There are, however, exceptions to the statutory requirement that one who practices engineering must be registered and certified. Among those exceptions are the following:

"(5) An individual, firm, partnership or corporation practicing engineering or land surveying:

"(a) On property owned or leased by the individual, firm, partnership or corporation, or on property in which the individual, firm, partnership or corporation has an interest, estate or possessory right; and

"(b) That affects exclusively the property or interests of the individual, firm, partnership or corporation, unless the safety or health of the public, including employees and visitors, is involved.

"(6) The performance of engineering work by a person, firm or corporation, or by full-time employees thereof, provided:

"(a) The work is in connection with or incidental to the operations of the persons, firms or corporations; and

"(b) The engineering work is not offered directly to the public."

ORS 672.060(5), (6).

B. *The "Engineering Proposal"*

Grants Pass Irrigation District (GPID) owns and operates the Savage Rapids Dam on the Rogue River in southern Oregon. The purpose of the dam is to divert water from the river into irrigation canals for irrigation of farmlands owned by GPID patrons.

Petitioner was elected to the board of directors of GPID in 1997 and began serving his term in January 1998. He served as chair and also was designated as GPID's spokesperson and liaison with engineering consulting firms and state and federal agencies. He is not a professional engineer registered in the State of Oregon.

Beginning in 1997, a controversy arose regarding the provision of irrigation water to GPID patrons in a manner complying with the Endangered Species Act (ESA),

16 USC §§ 1531-34 (2000), specifically, requirements relating to the protection of threatened southern Oregon/northern California coho salmon. In 1998, GPID installed fish screens in the south irrigation canal. GPID contracted with Harza Engineering (Harza) to perform engineering work relating to the south irrigation canal fish screens.

Also in early 1998, GPID sent letters to the National Marine Fisheries Service (NMFS) proposing certain "interim measures" to reduce juvenile salmon mortality at the dam; the letters were prepared by Harza and signed by petitioner in his capacity as chair of GPID. In its response dated April 3, 1998, NMFS criticized current conditions at the dam and questioned GPID's proposed interim measures. GPID then considered installing fish screens in the north irrigation canal that were similar to fish screens used by the Glenn-Colusa Irrigation District (Glenn-Colusa) in northern California. GPID obtained engineer-designed drawings of the screens from Glenn-Colusa and specifications for and drawings of the screens from the screen supplier. GPID also requested funding for the north irrigation canal fish screens project from the Oregon Legislative Assembly. The legislature's Emergency Board approved $400,000 in funding, conditioned on GPID obtaining preliminary approval for the project from NMFS and the Oregon Water Resources Department. A portion of the funding was to be used to pay professional engineers to design the project.

On September 21, 1998, GPID submitted to NMFS a document entitled "Engineering Proposal—Savage Rapids Dam—NMFS Compliant Vee-Wire Screens for North Hydro-Turbine and Pumping Intake Facility." Accompanying the document was a cover letter signed by petitioner, noting that the document was a "detailed 27-page Engineering Proposal" and indicating that GPID was "ready to proceed with the contracting process" for the project. Also on September 21, 1998, GPID issued a press release announcing its submission to NMFS of "a detailed 27-page engineering proposal" for installation of the north irrigation canal fish screens and listing petitioner's name, title, and telephone numbers.

NMFS responded to GPID's submission in a letter to petitioner dated October 5, 1998. Among other things, NMFS requested that petitioner "change the title of your proposal," noting that the design was not NMFS-compliant and that the title misleadingly implied that the design had already received NMFS approval. As to the substance of the September 21, 1998, proposal, NMFS stated that drawings submitted with it "lack[ed] the detail needed to perform an adequate review," including lack of consistent scale, incomplete dimensions, and lack of pertinent information regarding elevation. NMFS also set out numerous "specific design concerns" that it had relating to the proposal. NMFS recommended that GPID contract the design to an "experienced engineering firm that is familiar with NMFS juvenile fish screening criteria."

On October 8, 1998, petitioner responded to NMFS's October 5 letter. He first thanked NMFS for reviewing "GPID's Engineering Proposal." He also indicated that GPID was "utilizing a fast-track specification and solicitation process that employs 'concurrent engineering' " and that was consistent with United States Department of Defense processes. As to the substance of the proposal, petitioner stated, among other things, that the drawings included therein "are completely adequate to evaluate the proposed installation" of fish screens and that the accompanying engineering descriptions "provide all of the descriptions and physical characteristics required."

On October 13, 1998, GPID held a public meeting at which the north irrigation canal fish screen project was discussed. According to the written minutes of the meeting, petitioner reported to the attendees that the "engineering proposal" for the north irrigation canal fish screen project had been submitted to NMFS, that NMFS had responded with an "initial review of the engineering proposal," and that the proposal had been sent out to approximately 90 potential bidders for bids. Also according to the written minutes, an audience member asked, "[w]ho has been doing the designing up to this point?" Petitioner responded, "[w]e have been doing the designing." Another audience member asked, "Who is the engineer in charge of this project for GPID?" According to the

written minutes, petitioner responded that he was the engineer in charge and that he was receiving assistance from two other members of the GPID board who had been involved in the installation of the south irrigation canal fish screens. The minutes reflect that petitioner stated, "[W]e are competent to do this design work and if we reach the point that we need to have the engineering expertise of Harza, we will pay them for it." When asked who would be liable if the project did not perform properly, petitioner responded in part that "[t]his is not a difficult engineering project" and the board was confident that it would constitute a suitable installation. On being questioned regarding the specifications of the screens, he stated, "If you will read the engineering proposal and the solicitation package, and if you understand blue print reading, you will see that that detail is clearly called out [sic] in our drawings." Finally, when asked how GPID arrived at the figure of $450,000 for its Emergency Board funding request, petitioner stated that it was "based upon a basic engineering estimate" and that the estimate was based on a "very nearly complete" engineering package. Petitioner later reviewed and voted to approve the written minutes of the meeting.

On October 16, 1998, petitioner again responded in writing to NMFS's October 5 communication. As pertinent here, petitioner stated that there was "no engineering basis" for NMFS's assertion regarding the adequacy of turbine intake flows. He also made various assertions relating to the design and functioning of components of the proposed project and their compliance with NMFS criteria, requested that NMFS provide it with the basis for its stated concerns regarding reverse turbine flows, and stated that, in the meantime, "GPID continues to assert that its engineering analysis" of the relevant project component was accurate. Petitioner disputed various contentions of NMFS relating to fish screen design, in one instance on the ground that the contention was contrary to the beliefs of "rationally thinking engineers." He requested that NMFS provide GPID with any additional concerns it had regarding "the Engineering Proposal" and reiterated that GPID would use Harza as a "consultant to GPID, but on a demand basis."

Also in October 1998, GPID solicited proposals from contractors for manufacture and installation of the north irrigation canal fish screens and related components of the project. The solicitation was prepared by petitioner and included design drawings and calculations that he prepared.

On December 23, 1998, petitioner sent a letter to NMFS in which he referred to the September 21, 1998, submission to NMFS as GPID's "formal fish screen Engineering Proposal" and asserted that NMFS had unduly delayed in reviewing the proposal. Petitioner also stated, "GPID does not intend to waste its rather scarce resources on the use of highly paid engineering consultants to duplicate the work that GPID is capable of doing for itself."

In early 1999, GPID contracted with CH2M Hill to provide consulting engineering services.

GPID ultimately failed to obtain approval from NMFS for the north irrigation canal fish screen project. For that reason, the funding approved by the Emergency Board was never released to GPID. Neither Harza nor CH2M Hill ever made engineered drawings of the relevant fish screens.

C. *Administrative Proceedings*

In October 1999, the board served on petitioner a "Notice of Intent to Assess Civil Penalty," in which the board alleged that, by stating that he was an engineer and that he was performing the engineering for the fish screen project, he had engaged in the practice of engineering in violation of ORS 627.020, ORS 672.025, and ORS 672.045. Petitioner filed an answer in which he denied the allegations and asserted affirmative defenses to the allegations, including the defense that he was subject to statutory exceptions from the registration requirement under ORS 672.060. Petitioner also requested a hearing.

The hearing was held in March 2001 before an administrative law judge (ALJ) from the Office of Administrative Hearings.[1] Petitioner testified at the hearing,

---

[1] At the time of the hearing, the Office of Administrative Hearings was known as the Hearing Officer Panel and its administrative law judges were known as hearing officers. We refer to them according to the current terminology.

as did Spickler and Gove, who were other members of the board of directors of GPID; Postlewaite, a Harza engineer; Ryan, a CH2M Hill engineer; Stuntzner, a registered engineer and water rights examiner who also was a current member of the board of engineering examiners; Neelund, a registered engineer and patron of GPID; and Bassett, a registered engineer and head of the building safety department of Josephine County.

In June 2001, the ALJ issued a proposed order. In the order, the ALJ found, among other facts, that on September 21, 1998, GPID had sent a "preliminary proposal" to NMFS accompanied by a cover letter signed by petitioner and that the proposal contained a description of the project, estimates, and statistics prepared by petitioner; information provided by the City of Grants Pass; and an "engineered drawing" supplied by Glenn-Colusa. The ALJ also found that petitioner had "erroneously titled" the preliminary proposal as an "engineering proposal," that the drawings and the proposal were conceptual only, and that the proposal included "no structural calculations or engineering details which would constitute professional engineering work." In a finding of fact relating to NMFS's October 5, 1998, letter to petitioner, the ALJ again referred to the September 21, 1998, document as a "preliminary proposal" and found that NMFS had recommended that GPID "contract the design to an experienced engineering firm" and that GPID "retitle its preliminary proposal."

The ALJ also found that, before September 23, 1998, NMFS had consulted with Harza about the north irrigation canal fish screens proposal and that, in October 1998, the September 1998 proposal was reviewed by a registered professional engineer from Harza. The ALJ found that, in October 1998, GPID solicited proposals regarding the north irrigation canal fish screens from contractors and professional engineering firms, including Harza and CH2M Hill, and that Ryan, a registered engineer from CH2M Hill, reviewed the "preliminary proposal." She found that petitioner was not a registered professional engineer, that he did not represent to NMFS personnel that he was a registered professional engineer, and that he did not represent at the

October 13, 1998, GPID board meeting that he was a professional engineer or that he was capable of performing the work of one.

The ALJ concluded that petitioner did not violate ORS 672.020 and ORS 672.045 by engaging in the practice of engineering. In reaching that conclusion, the ALJ ascribed greater credibility and weight to the testimony of Postlewaite and Ryan, the Harza and CH2M Hill engineers, than she did to that of GPID board member Gove or GPID patron Neelund. The ALJ reasoned that the latter two witnesses lacked personal knowledge of the relevant events and had exhibited "personal bias"; in addition, Neelund was a member of an organization that had opposed petitioner's chairmanship of GPID. The ALJ also determined that there was insufficient evidence that petitioner had either stated or implied that he was a registered professional engineer or that he personally would perform the engineering work on the north irrigation canal fish screen project, and that there was "massive countervailing evidence" that Harza and CH2M Hill would perform the engineering work on the project. The ALJ also determined that petitioner did not state or imply in his correspondence with NMFS that he was a registered professional engineer and that NMFS personnel understood that he was not. The ALJ proposed that the board dismiss the charges against petitioner.

In September 2001, after considering the ALJ's proposed order, the board issued an amended proposed order, in which the board modified several of the ALJ's findings of fact and made several additional factual findings. *See* OAR 137-003-0655 (providing for issuance of amended proposed order). Specifically, the board deleted the ALJ's references to petitioner's September 21, 1998, submission to NMFS as a "preliminary" proposal. It also added findings that (1) in petitioner's cover letter accompanying the September 21, 1998, submission, petitioner referred to the submission as an "Engineering Proposal"; (2) in its October 5, 1998, letter to petitioner setting out the "shortcomings" in the September 21, 1998, submission, NMFS considered that submission "to be a proposed design for juvenile fish screens"; and (3) in his October 8, 1998, response to NMFS, petitioner "insist[ed]"

that the submission was "completely adequate to evaluate" the proposal and "repeatedly insisted that the dimensions, calculations, hydraulic flow data and engineering analysis of the proposed turbine intake channel were accurate." The board also found that, "[t]ellingly," petitioner had informed NMFS that Harza was not authorized to communicate with NMFS and that he was " 'responsible for the GPID Engineering Proposal and am the person most able to respond to technical questions you may have about the proposal.' " Additionally, the board found that, by making those statements, petitioner "strongly inferred [*sic*] that he was the design engineer for the north irrigation canal fish screen project" and that the letter therefore provided additional evidence that he had engaged in the practice of engineering. The board also found that, in his November 25, 1998, letter to NMFS, petitioner reiterated his assertion that he was "responsible for the GPID engineering proposal" and was "the person most able to respond to technical questions."

The board concluded that petitioner "violated ORS 672.020 and ORS 672.045 by engaging in the practice of engineering without a license as defined in ORS 672.005 and [ORS 672].007(1)(a), (b), and (c)." In the "discussion" section of its amended proposed order, the board explained that, although the ALJ had been persuaded by the testimony of engineers hired by GPID, those engineers lacked expertise in determining whether particular activities constitute the unauthorized practice of engineering. The board also explained that it was modifying the ALJ's factual findings relating to the title and content of petitioner's submission to NMFS because, according to the board, a preponderance of evidence supported a finding that petitioner intentionally titled the submission "Engineering Proposal" and supported a finding that the plans and calculations contained in the proposal "go well beyond a conceptual drawing" to constitute engineering design work, including, for example, descriptions of pillar and screen locations and spacings. The board also explained that, contrary to the ALJ's findings, it found the testimony of witnesses Stuntzner, Neelund, and Gove to be credible based on Stuntzner's lack of personal involvement in the project and lack of personal or professional relationship with petitioner and other witnesses and on Neelund's

and Gove's first-hand knowledge of petitioner's statement at the October 13, 1999, meeting that he was the "engineer in charge." The board also found that the "best evidence" of what petitioner stated at the October 13 meeting was the minutes of that meeting, which petitioner had reviewed and approved; the board therefore rejected the ALJ's finding that petitioner's hearing testimony regarding his October 13 statement was more credible. The board reasoned that, where there was abundant evidence that petitioner himself had prepared the "Engineering Proposal" and, moreover, had insisted in his correspondence with NMFS that the proposal was "completely adequate" to evaluate the proposed project, as well as implying that he was the design engineer, a preponderance of the evidence supported a conclusion that he had violated ORS 672.007(1)(b) and (c), ORS 672.020, and ORS 672.045(1).

In its amended proposed order, the board also considered whether petitioner's activities fell within the exceptions to the registration requirement that are provided in ORS 672.060(5) and (6). As discussed in further detail below, the board concluded that petitioner's activities did not qualify for the exception set out in ORS 672.060(5), pertaining to work performed on property owned by an entity, because the activities did not exclusively affect GPID's property but also affected public safety. It concluded that petitioner's activities did not qualify for the exception set out in ORS 672.060(6) because petitioner offered the relevant engineering work "to the public," including submitting the proposal to NMFS and presenting it in GPID board meetings, to the legislature, and in press releases.

The board ultimately concluded that the "Engineering Proposal," "standing alone," established by a preponderance of evidence that petitioner had engaged in the unauthorized practice of engineering and that petitioner's correspondence with NMFS and his statement at the October 13, 1998, GPID meeting constituted additional, albeit unnecessary, evidence to the same effect. Having determined that petitioner violated the relevant statutes, the board imposed a fine of $1,000.

Petitioner did not file any exceptions to the amended proposed order. *See* OAR 137-003-0655(4), (5) (providing that a party may file exceptions to amended proposed order). In January 2002, the board adopted the amended proposed order as the final order in the case. OAR 137-003-0655(6). This judicial review proceeding ensued.

## II.   DISPOSITION OF THE MERITS

Petitioner advances three assignments of error. First, he contends that the board erred when, after concluding that he had engaged in the practice of engineering without a license, it proceeded to determine whether any statutory exceptions apply. According to petitioner, because the ALJ had not made findings on those exceptions, the board was not authorized to consider them. Second, he contends that—on the merits—the board erred in concluding that he had engaged in the practice of engineering. Third, he argues that—again, on the merits—the board erred in concluding that his conduct did not fall within each of several exceptions to the statutory registration requirement. We address each of those assignments in turn.

A.  *First Assignment: The Board's Review Authority*

In his first assignment of error on judicial review, petitioner argues that the board erred in making additional findings of fact and conclusions of law regarding the applicability of the statutory exceptions in ORS 672.060(5) and (6) in the absence of findings and conclusions by the ALJ regarding those matters. According to petitioner, under ORS 183.650, an agency's authority to modify a proposed order issued by an ALJ is limited to the authority to modify findings and conclusions initially made by the ALJ, as provided in subsection (3) of that statute; conversely, petitioner contends, the agency may not make new findings and conclusions pertaining to an issue that the ALJ did not address.

The board responds that petitioner's first assignment of error is not preserved because he failed to submit any exceptions or objections to the board's amended proposed order, in which it first addressed the statutory exception issue, *see* OAR 137-003-0655(5) (providing for exceptions to amended proposed orders), and because the asserted error is

not an "error of law apparent on the face of the record," ORAP 5.45(1), that this court should consider as a discretionary matter. On the merits, the board contends that ORS 183.650(3) merely sets out standards for modification of a finding that an ALJ has made and does not preclude the board from making additional findings on issues that the ALJ did not address. Rather, when the board takes the latter action, it need only, and did, comply with the mandate in ORS 183.650(2), pertaining to modification by an agency of "the form of order issued by the [ALJ] in any substantial manner." The board also notes that the ALJ had no reason to consider the statutory exceptions to the engineering registration requirement because she determined that petitioner had not violated that requirement. In short, the board argues that, because its supplemental findings were supported by substantial evidence in the record and it properly identified and explained them as provided in ORS 183.650(2), there was no error.

Petitioner replies that, in order to preserve this issue, he was not required to file exceptions to the board's amended proposed order. Rather, because he raised the exceptions issue in his answer to the board's "Notice of Intent to Assess Civil Penalty" and before the ALJ, the board was fully informed of his position regarding the exceptions. He also reiterates his contention that, notwithstanding ORS 183.650(2), the board lacked authority to supplement the ALJ's findings.

██ We begin with the matter of preservation because it is dispositive. ORAP 5.45(1) provides that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court." We have held that the preservation requirement expressed in that rule applies not only to appeals of trial court judgments but also to judicial review of agency action. *See, e.g., Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003); *OR-OSHA v. Don Whitaker Logging, Inc.*, 148 Or App 464, 471, 941 P2d 1025 (1997), *rev'd on other grounds*, 329 Or 256, 985 P2d 1272 (1999). In general, to preserve a contention for appeal or judicial review, a party must provide the lower court or agency with an explanation of his or her objection that is specific enough to ensure that the

court or agency is able to consider the point and avoid committing error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

In this case, the following rules of procedure apply. After a hearing, the ALJ issues a proposed order. OAR 137-003-0645. If the proposed order is favorable to a party and the agency intends to reject that recommendation and issue an order adverse to the party, the agency is required to issue an amended proposed order. OAR 137-003-0655(3). The amended proposed order must include a statement that a party may file exceptions and present argument to the agency. OAR 137-003-0655(4). Finally, the agency must consider any timely exceptions and argument before issuing a final order; alternatively, the agency may issue another amended proposed order in light of the exceptions or argument. OAR 137-003-0655(5). Thus, the applicable rules afford parties an opportunity to bring errors in an amended proposed order to the attention of the agency.

■    As we have noted, the ALJ issued a proposed order favorable to petitioner. The board, however, issued an amended proposed order in which it modified a number of the ALJ's findings of fact and made the additional findings of fact about which petitioner now complains. In its amended proposed order the board notified petitioner of the opportunity to file exceptions and present argument. Petitioner, however, chose not to file any exceptions to the amended proposed order. As a result, petitioner never argued to the board that it lacked authority to make the additional findings of fact. Even assuming for the sake of argument that the board erred in making those additional findings, petitioner never gave the board the opportunity to avoid that error in adopting its final order.

Petitioner's argument that he preserved his assignment of error by arguing to the ALJ that the exceptions apply misses the point. The assignment of error is not about whether the exceptions apply. It is about whether the board had the authority to address them. Petitioner never advanced *that* issue until now. Accordingly, it is unpreserved, and we will not address it for the first time on review.

B. *Second Assignment: The Unauthorized Practice of Engineering*

In his second assignment of error, petitioner advances a number of different arguments. At the outset, he asserts that the board erred in concluding that he had engaged in the unlawful practice of engineering as defined in ORS 672.005. In support of that assertion, petitioner first argues that the board's findings relating to its conclusion are not supported by substantial evidence in the record. He also argues that, as a matter of law, the board erred in modifying findings of fact made by the ALJ because the ALJ's findings were supported by a preponderance of the evidence. Specifically, petitioner asserts that evidence—including the testimony of three professional engineers regarding the nature of GPID's September 21, 1998, "Engineering Proposal"; evidence that the September 21 proposal was derived from existing NMFS, United States Geological Service, and Glenn-Colusa documents; and evidence that the proposal was never put into effect—supports the ALJ's finding and conclusion that the September 21 proposal was a "preliminary" proposal for the fish screen project, that the drawing and proposal were "conceptual only," and that none of the details of the proposal constituted professional engineering work. He also asserts that there is no evidence in the record that anything he did required engineering education, training, and experience. He asserts that, to the contrary, the September 21, 1998, "Engineering Proposal" could have been prepared by a high school student; that Neelund's testimony was insufficiently specific as to what actions of petitioner constituted professional engineering; and that there was evidence that NMFS itself considered the proposal to be inadequate and urged GPID to employ consulting engineers.

Petitioner also argues that there was no evidence that he ever stated or implied that he was a registered professional engineer or that he was able to perform professional engineering work, as provided in ORS 672.007(1). Petitioner argues that his statement at the October 1998 meeting that he was the "engineer in charge" of the project was insufficient for that purpose in light of the circumstances in which it was made, including the fact that he was acting as a spokesperson

for GPID at that time and his contemporaneous representation that Harza would be performing engineering work for GPID when required.

Finally, petitioner asserts that the board violated his due process rights by permitting Stuntzner—who was both a board member and a witness at the March 2001 hearing before the ALJ—to participate in the board's September 2001 deliberations on its amended proposed order, thereby "intermingling" the board's prosecutorial and adjudicative functions.

The board responds that, as an initial matter, petitioner's second assignment of error is unpreserved in its entirety. It also argues that "overwhelming" evidence in the record supports its conclusion that petitioner engaged in the practice of engineering. According to the board, the September 21, 1998, "Engineering Proposal" is sufficient without more to demonstrate that petitioner practiced engineering. The board also points to petitioner's subsequent correspondence with NMFS, to his statements at the October 1998 GPID board meeting as recalled by witnesses in the March 2001 hearing and as reflected in the minutes of the board meeting, and to his testimony in the March 2001 hearing. The board contends that, in light of that evidence, the evidence relied on by the ALJ—the testimony by Ryan, Postlewait, and Bassett did not constitute a preponderance of evidence to support the ALJ's contrary conclusion. In short, the board contends that, on this record, petitioner practiced engineering. As to Stuntzner's participation in the proceeding, the board argues that petitioner failed to bring his concerns regarding Stuntzner's participation to its attention and that, in any event, Stuntzner merely seconded a motion to adopt the amended proposed order as the final order, did not participate in any substantive discussion of the matter, and recused himself from consideration of the final order. The board argues that, accordingly, petitioner's due process right to an unbiased decision-maker was not violated.

In reply, petitioner reiterates his contention that the record weighs in favor of the ALJ's determination that he did not engage in the unauthorized practice of engineering. He also notes that he did not learn of Stuntzner's participation in

the deliberative process until after he filed his petition for judicial review and that Stuntzner's "belated" recusal did not cure the error of his participation.

We again begin with preservation. To the extent that the board is asserting that petitioner did not preserve his challenge to the board's conclusion that he practiced engineering, we reject that assertion without discussion. We also reject without discussion any assertion that petitioner failed to preserve his substantial evidence challenge to the board's factual findings. Finally, we agree with petitioner that, where he did not learn of Stuntzner's participation in the deliberative process until after the time for filing exceptions to the amended proposed order had expired, he was not required to present that issue to the agency in order to obtain our review of it.

■ It remains for us to determine whether petitioner was required to, and did, preserve his challenge to the board's modification, under ORS 183.650(3), of the ALJ's findings of historical fact. In resolving that novel issue, it is helpful first to consider the statutory framework for the decision-making process and for this court's review of it. ORS 183.650 provides:

"(1) In any contested case hearing conducted by an administrative law judge assigned from the Office of Administrative Hearings, the administrative law judge shall prepare and serve on the agency and all parties to the hearing a form of order, including recommended findings of fact and conclusions of law. The administrative law judge shall also prepare and serve a proposed order in the manner provided by ORS 183.464 unless the agency or hearing is exempt from the requirements of ORS 183.464.

"(2) If the administrative law judge assigned from the office will not enter the final order in a contested case proceeding, and the agency modifies the form of order issued by the administrative law judge in any substantial manner, the agency must identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications.

"(3) An agency conducting a contested case hearing may modify a finding of historical fact made by the administrative law judge assigned from the Office of Administrative Hearings only if the agency determines that the finding of historical fact made by the administrative law judge is not supported by a preponderance of the evidence in the record. For the purposes of this section, an administrative law judge makes a finding of historical fact if the administrative law judge determines that an event did or did not occur in the past or that a circumstance or status did or did not exist either before the hearing or at the time of the hearing.

"(4) If a party seeks judicial review of an agency's modification of a finding of historical fact under subsection (3) of this section, the court shall make an independent finding of the fact in dispute by conducting a review de novo of the record viewed as a whole. If the court decides that the agency erred in modifying the finding of historical fact made by the administrative law judge, the court shall remand the matter to the agency for entry of an order consistent with the court's judgment."

Thus, under subsection (1), after a contested case hearing, the ALJ prepares a proposed order containing findings of fact and conclusions of law. Under subsection (2), the agency may modify the proposed order and, if it does so in a substantial manner, it is required to identify and explain the modifications. Subsection (3) addresses a particular type of modification of the proposed order—pertaining to an ALJ's findings of historical fact. The statute permits the agency to modify such findings of historical fact if the agency finds that the findings are not supported by a preponderance of evidence in the record. Finally, subsection (4) addresses our review of an agency's modification of a finding of historical fact. Under that subsection, we conduct *de novo* review of the record and make an independent finding of the disputed fact. If, as a result of that process, we decide that the agency erred in modifying the ALJ's finding, we remand the matter to the agency for entry of an order consistent with our finding. *Id.*

■     Although ORS 183.650(4) does not itself say so, in making our independent finding, we apply, as does the ALJ and the agency in weighing the evidence, a preponderance of evidence standard. *See Sobel v. Board of Pharmacy*, 130 Or App 374, 379, 882 P2d 606 (1994), *rev den*, 320 Or 588 (1995)

(although the Administrative Procedures Act (APA) does not expressly prescribe a standard of proof applicable to administrative proceedings, in the absence of legislative adoption of a different standard, a preponderance of evidence standard generally is applicable to contested cases under APA).

With that framework in mind, we turn to the preservation issue in this case. Petitioner argued to the ALJ that the evidence preponderated in his favor as to various facts relevant to the question whether he practiced engineering. Thus, the issue of which way the evidence preponderated as to those facts was squarely put before the decision-maker. The ALJ evaluated the evidence in the record and made findings of fact in petitioner's favor in that regard. As permitted by the statute, however, the board then engaged in review of the same issue, that is, whether the evidence preponderated in petitioner's favor as to the facts relevant to the question whether he practiced engineering. Thus, the same issue was squarely before the board. The board addressed that issue and decided against the ALJ's and petitioner's view of the evidence. There was nothing left for petitioner to preserve; the board already had addressed—and rejected—his contention as to the proper evaluation of the evidence on *de novo* review. We therefore reject the board's argument that petitioner failed to preserve his contention that the board erred in evaluating the evidence and in modifying the ALJ's findings accordingly.

We turn to the merits of the second assignment, beginning with petitioner's contention that the board erred in modifying the ALJ's findings of historical fact. As previously discussed, in its final order, the board modified several of the ALJ's findings relating to petitioner's September 21, 1998, submission to NMFS by deleting the ALJ's references to that submission as a "preliminary" proposal and by finding that petitioner referred to the submission as an "Engineering Proposal."[2] The board also rejected the ALJ's credibility

---

[2] In its discussion section, the board explained that a preponderance of the evidence showed that petitioner "intentionally titled" his September 1998 submission to NMFS as an "Engineering Proposal" and that, based on its content, the submission was not "conceptual only" but "presented engineering designs, plans, drawings, and calculations."

findings pertaining to witnesses Stuntzner, Neelund, and Gove.[3]

On *de novo* review of the record, we conclude that the board properly determined that the relevant factual findings by the ALJ were not supported by a preponderance of the evidence and that it therefore was authorized to modify those findings. Specifically, we find that the evidence on which petitioner relies is not sufficient to constitute a preponderance of evidence to support the ALJ's factual findings, including the testimony of petitioner's witnesses regarding the September 21, 1998, submission, the fact that the submission included existing documents, the fact that NMFS was not satisfied with the proposal, and the fact that the project was never undertaken. Even considered together, that evidence did not preponderate over contrary evidence in the record supporting the board's findings. Accordingly, we independently find, by a preponderance of the evidence, the same facts as the board found. The board did not err under ORS 183.650(3) and (4) in modifying the ALJ's findings of historical fact.

Petitioner's next contention pertains to the additional findings that the board made apart from those of the ALJ's that it modified. We pause to note that, as to those additional findings, the review provisions of ORS 183.650(3) and (4) do not apply. The board did not merely modify the findings of the ALJ, it made findings of its own. Thus, the board's order is subject to ORS 183.650(2), which provides that substantial modifications of an ALJ's proposed order other than modifications of findings of historical fact must be identified and explained. Then, as to any additional findings of fact, the APA requires that we review for substantial evidence. ORS 183.482(8)(c).

---

[3] The board explained that, unlike the ALJ, it did not "discount" Stuntzner's opinion that petitioner had engaged in the practice of engineering because his opinion was based on his review of relevant documents and because, unlike petitioner's contrary witnesses, Stuntzner was not involved in the project and had no personal or professional relationship with petitioner. The board explained that it rejected the ALJ's credibility findings as to Neelund's and Gove's testimony regarding petitioner's statements at the October 13, 1999, GPID meeting to the effect that he was the engineer in charge because those witnesses had attended the meeting and heard the statements and because their testimony was corroborated by the written minutes of the meeting.

As pertinent here, petitioner in effect challenges the board's findings that, in his cover letter to GPID's September 21, 1998, submission to NMFS, petitioner referred to the attached proposal as an "Engineering Proposal" and stated that GPID was prepared to solicit bids; that, in his October 8, 1998, letter to NMFS, petitioner stated that the design drawings in the September 21 proposal were adequate, that other specifications were accurate, and that he was "responsible" for the proposal and was the person most able to respond to technical questions; that petitioner reiterated that he was responsible for the project in a November 25, 1998, letter to NMFS; and that the minutes of the October 13, 1998, GPID meeting showed that petitioner stated that he was the "engineer in charge" of the project and that "we are competent to do this design work." The board properly identified and discussed each of those findings. In addition, each is supported by documentary evidence in the record. We therefore conclude that each of them is supported by substantial evidence.

■ Next, we consider whether the board properly concluded that petitioner engaged in the practice of engineering. The board reasoned that petitioner's preparation of the designs, plans, drawings, and calculations contained in the "Engineering Proposal" for the fish screen project constituted engineering work as defined in ORS 672.005. The board also reasoned that petitioner practiced engineering as provided in ORS 672.007(1)(b) and (c) by, among other actions, stating in the October 1998 GPID board meeting that he was the engineer in charge of the fish screen project; representing to NMFS that the "Engineering Proposal" was adequate as submitted, notwithstanding that petitioner also represented that an engineering firm would perform work on the project; and engaging in "detailed technical discussions" with NMFS in his later correspondence with that agency. We perceive no error in the board's reasoning and conclusion that petitioner engaged in the practice of engineering.

■ Finally, we reject petitioner's assertion that the board's order is deficient by reason of Stuntzner's participation in the administrative proceeding. One claiming that a decision-maker is biased has the burden of showing actual bias. *See Teledyne Wah Chang v. Energy Fac. Siting Council,* 298 Or 240, 262, 692 P2d 86 (1984) (citing *Boughan v. Board*

*of Engineering Examiners,* 46 Or App 287, 611 P2d 670, *rev den,* 289 Or 588 (1980)). In this case, however, petitioner's challenge fails at a preceding threshold: the record shows that Stuntzner did not act as a decision-maker. Specifically, at the September 10, 2001, meeting of the board, Stuntzner voted to accept the amended proposed order; however, there was no substantive discussion of the order at that meeting. Although Stuntzner was present at the January 15, 2002, meeting at which the board adopted the final order, he recused himself and left the room while the board discussed the order and did not participate in the vote to adopt the final order. Finally, petitioner does not point to any evidence in the record that Stuntzner's participation in the hearing affected any other board member's view of the case. Thus, petitioner cannot demonstrate that he was prejudiced by Stuntzner's participation in the hearing. *See Voelz v. Bd. of Engineering Examiners,* 37 Or App 113, 118, 118 n 2, 586 P2d 807 (1978), *rev den,* 285 Or 479 (1979) (due to the nature of administrative bodies, they are required to perform various functions including formulating, prosecuting, and adjudicating violations of applicable law; where only one member of the board participated in the prosecutorial stage of the proceeding to suspend the registrant's registration and that member did not participate in the final vote on suspension, there was no error).

C.   *Third Assignment: Statutory Exceptions*

In his third assignment of error, petitioner asserts that the board erred in determining that his conduct did not fall within the exceptions to the registration requirement set out in ORS 672.060(5) and (6). Specifically, petitioner asserts that GPID is a public corporation and that he performed his actions as an agent of the corporation, namely, as chair of GPID's board of directors and as its liaison between itself and other entities, thus satisfying the criterion in subsection (6) that his activities be "in connection with or incidental to the operations of the corporation." ORS 672.060(6)(a). He also argues that, although he "published" his work by communicating it to GPID patrons, the state, and NMFS, there is no evidence that his work was "offered directly to the public," as provided in ORS 672.060(6)(b). Petitioner argues that the

board had the burden to show that the exceptions did not apply to him and that it failed to do so.

The board responds that petitioner failed to preserve his claim of error relating to the exceptions by failing to file exceptions or objections to the board's amended proposed order. On the merits, the board contends that it was petitioner's burden to demonstrate that he qualified for the exceptions. It also argues that petitioner is not entitled to the benefit of ORS 672.060(5) because, although the fish screen project would have been located on GPID property, it had the purpose of bringing GPID into compliance with the Endangered Species Act by limiting juvenile fish mortality at the dam. Accordingly, the project affected the interests and property of other entities concerned with that purpose, including entities advocating for the removal of the dam, employees of the dam, fishermen, recreationists, downstream owners, and anyone else with an interest in the fishery, the river, or the controversy surrounding the dam. The board argues that petitioner is not entitled to the benefit of ORS 672.060(6) because his engineering proposal was filed with a public agency, NMFS, for the purpose of obtaining that agency's approval of the proposal as a solution to a public problem and to gain access to public money for the project. Accordingly, petitioner's work was effectively "offered to the public."

Petitioner replies that the board's interpretation of ORS 672.060(5) is so broad that "virtually anything anyone does will affect others" and that his "in-house" work for GPID entitled him to the exception in ORS 672.060(6).

We reject the board's preservation argument. Petitioner plainly placed in issue whether the statutory exemptions apply to him. We agree with the board, however, that it was petitioner's burden to demonstrate that he qualified for the exceptions to the registration requirement and that he failed to meet that burden. *See* ORS 183.450(2) (burden of presenting evidence to support a fact or position in a contested case is on the proponent of the fact or position).

■ In its final order, the board determined that petitioner was not entitled to the exception in ORS 672.060(5) because there was "compelling evidence" that the proposed

fish screens would affect "public safety," including effects on migrating juvenile fish, on employees required to service and maintain the screens, and on downstream users of the river. It is apparent to us from the record in this case that the fish screen project would have those as well as other probable effects on the public waters of the Rogue River, its resident fish population, and various users, as the board argues on judicial review. Accordingly, substantial evidence and reason support the board's determination that petitioner was not entitled to the exception from the registration requirement provided in ORS 672.060(5). Nor do we perceive any basis to decide that the board's legal conclusion is erroneous.

■ Next, the board concluded that petitioner was not entitled to the exception in ORS 672.060(6) because, on this record, GPID is itself a public corporation and petitioner submitted his engineering proposal to another public body, NMFS, as well as to the general public through GPID meetings, press releases, and GPID's funding request to the legislature. The board reasoned that, accordingly, petitioner offered the work "directly to the public." Those determinations also are supported by substantial evidence and reason and are correct as a matter of law. Petitioner's third assignment of error also fails.

Affirmed.