Argued and submitted August 27, affirmed November 10, 2004

John Michael Scott PIERCE,
*Petitioner,*

*v.*

DEPARTMENT OF PUBLIC SAFETY
STANDARDS AND TRAINING,
*Respondent.*

DPSST 36844; A122262

100 P3d 1125

John Hoag argued the cause for petitioner. With him on the reply brief was The Law Office of John Hoag, P.C.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

## LINDER, J.

The Department of Public Safety Standards and Training (DPSST) revoked petitioner's basic police certification and denied his application for intermediate police certification after finding that petitioner knowingly falsified his application for intermediate police certification. *See* ORS 181.662(1)(a). On review of DPSST's final order, petitioner asserts that DPSST erred by concluding that ORS 181.662(1)(a) requires a mental state of knowledge rather than the heightened mental state of intent to deceive. Because we conclude that the statute does not require intent to deceive, we affirm.

We draw from DPSST's findings of fact, which petitioner does not challenge. *See Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991) (unchallenged findings of fact are the facts for purposes of judicial review of an administrative agency's final order). In 1999, petitioner applied for a position as deputy sheriff for Josephine County, completing and signing a background investigation form as part of the hiring process. That form required petitioner to disclose whether he had ever been arrested for or convicted of a criminal act. He answered at that time: "Assault 4 Diversion. 12/2/93 completed probation program in 6 months. DUII Diversion 9/7/91. Completed Diversion program." Petitioner was subsequently hired by Josephine County as a deputy sheriff. As part of the county's background investigation, petitioner was interviewed by a sheriff's office representative, and petitioner described in that interview the details of his arrests and the disposition of the charges. In 2000, DPSST issued petitioner a basic police certificate.

In 2001, petitioner applied to DPSST for intermediate police certification. The application form required petitioner to answer, among other things, the question: "Have you ever been arrested and/or charged with a crime including traffic crimes?" Petitioner responded: "18 Sept. 1991 DUII arrest. Diversion completed." Petitioner did not disclose the arrest and conviction for fourth-degree assault as he had when he first sought the deputy sheriff position in Josephine

County. DPSST conducted a criminal history check that revealed the existence of his past arrest and conviction for fourth-degree assault. Petitioner's explanation for the non-disclosure was that he did not believe the assault was on his criminal record and he was embarrassed about it.

DPSST subsequently issued a notice of intent to deny petitioner's intermediate police certification and also to revoke his basic certification. Petitioner requested a contested case hearing before an administrative law judge (ALJ). At the hearing, petitioner argued that ORS 181.662(1)(a) requires a finding that he made a false representation with intent to fraudulently conceal or deceive. The ALJ concluded that petitioner knowingly failed to disclose his arrest and conviction of fourth-degree assault and that the statute was satisfied by his doing so, thus effectively rejecting petitioner's argument that the statute requires specific intent, such as intent to deceive. The ALJ recommended that petitioner's basic police certification be revoked and that his application for intermediate police certification be denied.

DPSST generally adopted the ALJ's proposed order, with some modification and supplementation of the ALJ's factual findings and legal analysis. With regard to the mental state required to satisfy the statute, DPSST determined that "whether knowledge or any other culpable mental state is a necessary element of a violation of ORS 181.662(1)(a) is not an issue that must be resolved in this case." Later in the order, DPSST explained:

"The Proposed Order describes the issue in this case to be 'whether petitioner intentionally falsified an application for certification or other documents submitted to DPSST.' The ALJ, applying that standard, recommended revocation of petitioner's basic police certification and denial of his application for intermediate police certification. Accordingly, the ALJ found that petitioner knowingly falsified information on his application for certification submitted to DPSST and, as stated above, DPSST adopts that finding. It is uncertain, however, whether a licensee's or applicant's mental state is a necessary element of the violation. *Compare* ORS 703.210(3) ("made a material misstatement') *and* ORS 696.301(1) (authority of Real Estate Commission to suspend or revoke if licensee '[k]nowingly or negligently

pursued or continued course of material misrepresentation') *with* ORS 181.662(1)(a) (denial or revocation if 'officer or instructor falsified any information'). Because the evidence in this case is sufficient to support a finding that the falsifications were knowingly made, it is not necessary to resolve in this case whether the petitioner's mental state is a necessary element of the violation."

(Footnote omitted.) DPSST therefore revoked petitioner's basic police certification and denied his application for intermediate police certification.

On review, petitioner argues that DPSST legally erred by concluding that falsification does not require "a higher mental state of an intent to deceive." The starting point in resolving that issue is the express text of the statute. ORS 181.662(1)(a) provides that DPSST may deny or revoke a public safety (*i.e.*, police) officer's certification on a finding that the officer "*falsified* any information submitted on the application for certification or on any documents submitted to the Board on Public Safety Standards and Training or the department." (Emphasis added.) In interpreting the meaning of the term "falsified," we determine the intent of the legislature by examining the text of the statute in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The common definition of the verb "falsify," as pertinent here, means "to represent falsely : MISREPRESENT, DISTORT." *Webster's Third New Int'l Dictionary* 820 (unabridged ed 1993). Misrepresent, in turn, can mean "to represent incorrectly: to give a false, imperfect, or misleading representation" or it can "impl[y] intent, suggesting deliberate falsification, injustice, bias, or prejudice." *Id.* at 1445. The same is true of the term "falsification," which is the noun form of the verb "to falsify." A "falsification" can include either a "willful misstatement or representation" or simply "the act or an instance of falsifying." *Id.* at 820.

Thus, as a matter of plain meaning and common usage, "to falsify" can refer to the mere act of making a false or erroneous representation or it can refer to doing so with a particular mental state, such as deliberately or intentionally. Contrary to petitioner's position, then, a heightened mental state such as intent to deceive is not inherent whenever the legislature refers to falsifying information. As a result,

viewed in isolation, the text of ORS 181.662(1) does not reveal whether the legislature intended to require that, as a condition for denying or revoking a police certification, an applicant for certification had to make a false representation with the intent to deceive or other specific mental state.

But we are not limited to viewing ORS 181.662(1) in isolation. *See, e.g., Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 630-31, 69 P3d 742, *rev den*, 336 Or 60 (2003) (examining other statutes to determine whether legislature typically uses particular wording to communicate an intention that a statutory scheme is exclusive). Rather, myriad other statutes impose regulatory consequences for presenting false information to an agency as part of a licensing or certification process. An examination of those statutes reveals that the legislature knows how to specify a heightened mental state when it intends one and, in addition, that the legislature frequently does so. That is true whether the required mental state is knowledge, intent, deliberateness, or willfulness.

For example, under ORS 438.160, a clinical laboratory license may be revoked or refused if the owner or director "[i]ntentionally" makes false statements in the application for the license or "intentionally" falsifies any report. Under ORS 479.660, an electrical or elevator inspector license can be cancelled or suspended if the applicant "deliberately falsifies" the application. Under ORS 480.635, a license to work on a boiler may be suspended and ultimately revoked for "willful falsification" of any matter in the application for the license. Under ORS 453.790, a radiology inspector's accreditation can be refused, suspended, or revoked for "knowingly falsifying" any information on an inspection report.[1] Finally, although not arising in a licensing or certification context, the legislature in other regulatory contexts has sometimes

---

[1] The same is true of numerous statutes that make it a violation or crime to falsify information. *See, e.g.*, ORS 162.085 (unsworn falsification committed if "person knowingly makes any false written statement"); ORS 165.080 (falsifying business records committed if falsification occurs "with intent to defraud"); ORS 181.991 (Class A misdemeanor to "knowingly falsif[y]" information pertinent to application for license to provide private security services); ORS 806.050 (Class A misdemeanor to "knowingly" certify falsely the existence of motor vehicle liability insurance).

required that a falsification, to fall within a particular prohibition, must be made with "intent to deceive." *See, e.g.*, ORS 706.725 (relating to falsifying certain records of "operating institutions"); ORS 723.816 (relating to falsifying credit union records and documents).

The fact that the legislature knows how to specify a mental state for falsifying information, and did not do so in ORS 181.662(1)(a), convinces us that, at a minimum, the statute does not require a specific and heightened mental state such as "intent to deceive."[2] *See Emerald PUD v. PP&L,* 302 Or 256, 269, 729 P2d 552 (1986) (noting that, "when the legislature includes an express provision in one statute but omits such a provision in another statute, it may be inferred that such an omission was deliberate" (internal quotation marks omitted)). As DPSST observed in its order, that conclusion is enough to resolve petitioner's challenge. We need not also decide whether DPSST may refuse to issue or revoke a police certification under ORS 181.662(1)(a) if false information is presented inadvertently or without an applicant's conscious awareness or knowledge. Rather, we agree with DPSST that, at a minimum, the statute is satisfied if an applicant knowingly falsifies information in the application for police certification. Here, both the ALJ and the board found that petitioner knowingly omitted his fourth-degree assault arrest and conviction from his 2001 application. Substantial evidence supports that finding.[3]

Affirmed.

---

[2] The legislature's failure to specify a mental state in ORS 181.662(1)(a) cannot be assumed to be an oversight. The statute is not unique in that regard. Many other regulatory statutes likewise do not require, as a condition of imposing sanctions or regulatory consequences for the falsification, that a falsification be made knowingly, intentionally, deliberately, or with any other specified mental state. *See, e.g.*, ORS 480.365(1) (gasoline dispensing license for nonretail facility may be revoked or suspended if licensee "[f]alsified the application for the license"); ORS 679.060(6) (Board of Dentistry may refuse dental license to anyone who falsified the application for licensure); ORS 679.115(3)(b) (dental instructor's license may be refused to applicant who has falsified an application for a license).

[3] As a second assignment of error, petitioner asserts that DPSST's order is not supported by substantial evidence. We reject petitioner's argument in that regard without discussion.