Argued and submitted February 9, 2009, reversed and remanded for reconsideration
May 12, petition for review denied October 21, 2010 (349 Or 173)

Raymond MURRAY,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

Public Employees Retirement Board
115032; A129306

230 P3d 993

Thomas K. Doyle argued the cause for petitioner. With
him on the briefs was Bennett, Hartman, Morris & Kaplan,
LLP.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

In 2001 and 2002, the Variable Annuity Account (Variable Account) of the Public Employees Retirement Fund sustained losses, and the Public Employees Retirement Board charged a combined total of roughly $1,964,000 against the principal of the Variable Account for the Variable Account's pro rata share of the administrative expenses of the Public Employees Retirement System (PERS) for those years. Petitioner, a PERS member who had allocated 75 percent of his employee retirement contributions to the Variable Account, challenged the legality of those charges in a contested case proceeding. The board ultimately issued a final order affirming those charges because it concluded that the Variable Account's pro rata share of PERS administrative expenses in 2001 and 2002 was required, by statute, to be paid from Variable Account principal. Petitioner sought judicial review of that order, asserting that the board erred in its interpretation of ORS 238.260 (2001) and ORS 238.610 (2001).[1] We conclude on judicial review that the board erred in its interpretation of those statutes, and we reverse the board's order and remand for reconsideration.

Before delving into the facts of this case, the following summary of the history and operation of PERS provides necessary context. PERS is funded "from three sources: (1) employee member contributions * * *; (2) employer contributions * * *; and (3) investment earnings on those contributions." *Strunk v. PERB*, 338 Or 145, 157, 108 P3d 1058 (2005). Those combined assets constitute the Public Employees Retirement Fund and are used to pay the administrative expenses of the system and member service retirement allowances. *Id.*

The fund is composed of a number of accounts. In 2001 and 2002, two of the accounts within the fund contained member contributions and the earnings allocated to them:

---

[1] ORS 238.260 (2001) was amended in 2001, 2003, and 2005. Or Laws 2001, ch 945, § 47; Or Laws 2003, ch 67, § 3; Or Laws 2003, ch 625, § 36; Or Laws 2003, ch 794, § 218; Or Laws 2005, ch 808, §§ 2, 3. ORS 238.610 (2001) was amended in 2003. Or Laws 2003, ch 105, § 5; Or Laws 2003, ch 733, § 56. Those amendments did not alter the statutes in a way that affects our analysis of them. All statutory citations in the opinion are to the 2001 Oregon Revised Statutes.

(1) the Variable Account, which contained those contributions that members had elected to direct to their personal variable accounts, plus the earnings allocated to those contributions; and (2) the Regular Account, which contained the balance of member contributions not directed to the Variable Account, plus the earnings allocated to those contributions. *See id.* at 158 (explaining structure of PERS); ORS 238.250 (establishing regular accounts); ORS 238.260 (establishing variable accounts). With the exception of Variable Account funds, "all PERS funds are commingled for investment purposes." *Strunk*, 338 Or at 157. Interest earned by the Variable Account must be credited to the Variable Account and not to other accounts within the fund. ORS 238.260(2).

Originally, PERS members had only regular accounts, and their contributions were collectively deposited in the Regular Account within the fund. However, in 1967, the legislature created the Variable Account program "for members who are willing to have their contributions and benefits fluctuate with the equity markets." *Strunk*, 338 Or at 158. Although the members' variable accounts would not be subject to the guaranteed rate of return available to Tier One members' regular accounts,[2] it was considered likely that the Variable Account would, in the long run, outperform the Regular Account in earnings and would result in larger account balances for participating members. ORS 238.260(1), (6).

In 2001 and 2002, PERS members could direct a portion of their employee retirement contribution—25, 50, or 75 percent—away from their Tier One or Tier Two regular account[3] into a personal variable account, which, in turn, would be paid into the Variable Account within the fund. ORS 238.260(3); *Strunk*, 338 Or at 158. Members could start, stop, or change the percentage of their contributions directed to their variable accounts on a calendar-year basis. Additionally, at various times, members could (and still can) elect to transfer to their regular account their accumulated variable

---

[2] Tier One members are public employees who joined PERS before January 1, 1996. *Strunk*, 338 Or at 158.

[3] Tier Two members are public employees who joined PERS on or after January 1, 1996. *Strunk*, 338 Or at 159.

account contributions and allocated earnings. ORS 238.260(9), (14). Effective January 1, 2004, PERS members are no longer permitted to contribute or transfer funds to variable accounts. Or Laws 2003, ch 67, § 3. PERS continues to credit the remaining variable accounts in existence on January 1, 2004, with earnings and losses attributable to those accounts. *See Strunk*, 338 Or at 164.

Petitioner is a PERS member who elected in the early 1990s to direct 75 percent of his employee retirement contributions to be placed in the Variable Account. In 2001, the Variable Account suffered a loss of 11.19 percent of its value, and the board charged approximately $1,050,000 against the principal of the Variable Account for its pro rata share of PERS administrative expenses for that year. The Regular Account also suffered a loss that year; however, the board determined that ORS 238.610 required the Regular Account's share of PERS administrative expenses to be "paid by charging employer accounts based on 2001 employer contributions." Then, in 2002, the Variable Account suffered a loss of approximately 21.3 percent, and the board charged approximately $914,000 against the account's principal for its pro rata share of PERS administrative expenses. Again, the Regular Account also suffered a loss, and the board directed that that account's share of the administrative expenses be paid from employer contributions.

In June 2002, petitioner submitted an appeal to PERS challenging the computation of his 2001 PERS variable account balance. He contended that the computation understated his variable account balance because it included a reduction in the account resulting from the board's decision to charge a pro rata share of PERS administrative expenses for 2001 against Variable Account principal. In April 2003, petitioner submitted an appeal to PERS, based on the same grounds as his first appeal, challenging the computation of his 2002 variable account balance. PERS denied both appeals, and petitioner requested contested case hearings to challenge the denials. Ultimately, the board granted the hearing requests and consolidated the two matters.

A contested case hearing was held in August 2004. The statutory arguments at the hearing primarily focused on

ORS 238.610, governing PERS administrative expenses, and ORS 238.260, creating and controlling the Variable Account. ORS 238.610 provides that the administrative expenses of PERS shall be paid out of fund interest as follows:

"(1)  The administrative expenses of the system shall be paid from interest earned by the retirement fund; provided, that if such interest be insufficient the expense in excess thereof shall be paid from the contributions which this chapter requires participating employers to pay into the Public Employees Retirement Fund.

"* * * * *

"(3)  For each fiscal period designated by the board there shall be deducted from the interest earned by the retirement fund, the administrative expenses of the system for that period; provided, that if such interest be insufficient for such purpose, the excess expense shall be paid by deducting from the account of each employer participating in the system that fraction of the administrative expense of the system for that period which the employer's total contribution to the fund for the period is of the sum of all the employers' contributions to the fund for the period."

Subsection (2) of ORS 238.260 establishes the Variable Account within the fund, and subsection (6) provides, in part, that a "pro rata share of the administrative expenses of the system shall be paid from interest earned by the Variable Annuity Account." ORS 238.260(6) is silent with respect to how administrative expenses are to be paid if the Variable Account does not earn sufficient interest to pay the account's pro rata share of the expenses.

In February 2005, the administrative law judge (ALJ) issued a proposed order concluding that "PERS' determination to pay [Variable Account] administrative expenses for 2001 and 2002 from [Variable Account] principal was correct." The ALJ reasoned that,

"[b]ecause ORS 238.610 was enacted before ORS 238.260, it is reasonable to characterize the former as the general rule, with the latter creating a specific exception to the general rule. This exception is contained in ORS 238.260(6) which authorizes payment of administrative expenses for the [Variable Account] from interest and no other source. Unlike the general rule of ORS 238.610, ORS 238.260 does

not authorize payment of administrative expenses for the [Variable Account] from employer accounts."

From that premise, the ALJ concluded that "the legislature intended to create a separate method of payment for administrative expenses for the [Variable Account]" and, thus, he could not "add the [Variable Account] to the administrative expense provisions of ORS 238.610." In support of that conclusion, the ALJ reasoned that, unless ORS 238.260(6) is understood to require the Variable Account to pay a pro rata share of expenses in no-interest years, then the provision is superfluous, because, "[i]f the legislature had intended ORS 238.610 to apply to the [Variable Account], it would have had no reason to enact a specific administrative expense provision for the [Variable Account] in ORS 238.260."

Petitioner filed exceptions to the proposed order, but the ALJ rejected them. On May 24, 2005, the board adopted the proposed order as its final order. Petitioner timely sought judicial review of the order.

■ Under ORS 183.482(8)(a), we review the interpretation of statutes in a final agency order for legal error. Our task here, on review of the board's interpretation of the PERS statutes at issue, is to discern the legislature's intent, looking primarily to the text of the statutes in context. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).[4]

■ Ultimately, the resolution of this case turns on the proper meaning and interplay of ORS 238.260 and ORS 238.610. The administrative expense provisions of ORS 238.610 were enacted in 1953, and the provisions have remained essentially unchanged since then. The statute provides that, in years in which the fund as a whole fails to earn interest sufficient to pay the administrative expenses of PERS, any outstanding expenses (up to the entirety of that fiscal period's cost of administration) must be paid out of employer contributions to the fund.[5] Thus, subsections (1)

---

[4] Although the parties were free to provide legislative history for our consideration, *Gaines*, 346 Or at 171-72, they were unable to locate any legislative history bearing on the meaning of the statutory provisions at issue. Our review of the legislative history was similarly unavailing.

[5] ORS 238.225(1) provides that a "participating public employer shall, at intervals designated by the [board], transmit to the board those amounts the board

and (3) of ORS 238.610 embody the legislature's intention that the principal (that is, the combined account contributions and accrued earnings of prior fiscal periods) of the fund will not be invaded to pay PERS administrative expenses.

When the legislature established the Variable Account in 1967, the administrative expense provisions of ORS 238.610 were not altered, but, as noted, the statute that established the Variable Account, ORS 238.260, specifies in subsection (6) that a "pro rata share of the administrative expenses of the system *shall be paid from interest earned* by the Variable Annuity Account." (Emphasis added.) That means that the Variable Account is required to pay a pro rata share of PERS administrative expenses each year,[6] but only to the extent of the interest earned by the Variable Account. If interest earned by the Variable Account is insufficient to enable the account to pay its pro rata share of the administrative expenses for a year, the fund is nonetheless required by ORS 238.610 to pay the administrative expenses for that year notwithstanding the Variable Account's inability to pay its pro rata share of those expenses, which means that the balance of the expenses for the year must be paid from the sources specified in ORS 238.610: interest earned by the fund and, if that is insufficient, by employer contributions.

The record establishes that the Variable Account earned no interest in 2001 and 2002. It follows that, in those years, the Variable Account earned no interest from which to pay its pro rata share of PERS administrative expenses. Notwithstanding that, the board concluded that ORS 238.260(6) authorized it to require the Variable Account to pay its pro rata share of the administrative expenses for those years out of principal rather than interest. Contrary to the board's conclusion, we conclude that ORS 238.260(6) did not authorize the board to do that.

On judicial review, the board defends its conclusion by noting that, for accounting purposes, interest earned in a

---

determines to be actuarially necessary to adequately fund the benefits to be provided by the contributions of the employer under this chapter."

[6] ORS 238.610(2) leaves it to the board to select the fiscal period to use for purposes of calculating and paying PERS administrative expenses. The board has chosen a calendar year as the appropriate period.

year "can be a positive number, a negative number, or zero." In light of that principle, it reasons that the reference in ORS 238.260(6) to paying the Variable Account's pro rata share of administrative expenses "from interest earned" by the Variable Account can be understood to refer to both positive and negative interest. Hence, according to the board, the Variable Account earned negative interest in 2001 and 2002 from which it could pay its pro rata share of the administrative expenses for those years.

We readily reject that argument. The negative interest that the Variable Account earned in 2001 and 2002 represents the *loss* in value that the account sustained in those years. Simply put, the Variable Account cannot pay its pro rata share of administrative expenses *from* the value that the Variable Account lost in those years because, by definition, that value has been lost and is not available to pay anything. Moreover, the board did not purport to pay the Variable Account's pro rata share of administrative expenses from the money that the Variable Account lost in 2001 and 2002; it paid it from what remained *after* the loss, that is, from principal, which is not the same thing.

A further reason to reject the board's argument about negative interest is that it depends on interpreting the identical phrase in ORS 238.260 and ORS 238.610 differently. Both statutes specify that administrative expenses "shall be paid from interest earned" by the two sources specified in those statutes: the Variable Account in ORS 238.260, and the fund in ORS 238.610. According to the board, interest earned by the Variable Account from which to pay expenses can be positive or negative, which, in the board's view, means that the Variable Account will have the necessary funds from which to pay its pro rata share of expenses even when the Variable Account loses interest. However, the board interprets the same phrase when applied to the fund to refer only to positive interest. It does that because, otherwise, there would be no occasion in which employers would contribute toward PERS administrative expenses because, as with the Variable Account, if interest earned by the fund could be positive or negative, then, according to the board's reasoning, the fund, too, would have the necessary funds from which to pay

expenses when the fund lost interest, without the need for employers to contribute.[7]

Apart from its argument on judicial review about negative interest, the board reasoned in its order that the legislature's failure to specify in ORS 238.260(6) that the Variable Account's pro rata share of expenses is to be paid by employers if the Variable Account earns insufficient interest to pay its share of the expenses means that the legislature did not intend ORS 238.610 to apply to the Variable Account, because, if ORS 238.610 applies to the Variable Account, then employers *will* be required in some years to pay a portion or all of the Variable Account's share of the expenses. The board also reasoned that ORS 238.260(6) serves no function if ORS 238.610 applies to the Variable Account. We readily reject the board's reasoning.

With regard to the last point, ORS 238.260(6) serves at least two functions notwithstanding the applicability of ORS 238.610. ORS 238.260(2) provides that interest earned by the Variable Account "shall be credited to the account." By specifying in ORS 238.260(6) that the Variable Account is to pay a pro rata share of PERS administrative expenses from the interest that the account earns, the provision makes clear that ORS 238.260(2) does not insulate the Variable Account from paying a share of the administrative expenses of the system.

Conversely, it also ensures that the Variable Account does not pay more than its pro rata share of the administrative expenses. Assuming that ORS 238.260(2) does not otherwise insulate the Variable Account from paying administrative expenses, if the legislature had not enacted ORS 238.260(6), then the Variable Account could be required to pay more than its pro rata share of PERS administrative expenses. For example, if the Variable Account earned enough interest in a year to pay all PERS administrative expenses, and the balance of the fund lost interest that year, then ORS 238.610 would require the Variable Account

---

[7] At bottom, the board never explains, because it cannot, how the Variable Account can pay its pro rata share of PERS administrative expenses *from* the interest earned by the account if the account fails to earn enough *actual* interest to do that. Its argument about negative interest never confronts that conundrum.

to pay all of the administrative expenses. That is because the Variable Account is part of the fund,[8] and ORS 238.610 specifies that PERS administrative expenses shall be paid from the interest earned by the fund, unless the interest earned by the fund is insufficient to do that. Hence, ORS 238.260(6) serves both to impose *and* limit the obligation of the Variable Account to pay PERS administrative expenses. In other words, contrary to the board's view, ORS 238.260(6) is not superfluous if ORS 238.610 otherwise applies to the Variable Account.

The board also is wrong to conclude that the failure to specify in ORS 238.260(6) that employers will pay the Variable Account's pro rata share of administrative expenses when the interest earned by the account is insufficient to do that means that the legislature did not intend for ORS 238.610 to apply to the Variable Account. As the board recognized in its order, ORS 238.260(6) does not specify a source for payment of the Variable Account's pro rata share of administrative expenses other than interest earned by the account. However, the failure to identify an alternate source from which to pay the Variable Account's pro rata share simply means that, to the extent that the interest earned by the account is insufficient to pay the account's pro rata share, then the account will not pay its pro rata share of the administrative expenses. ORS 238.610 requires the fund to pay PERS administrative expenses from the interest earned by the fund and, if that is insufficient, from employer contributions. To the extent that the Variable Account does not pay its pro rata share of those expenses in a given year, then the shortfall will necessarily be made up by the sources identified in ORS 238.610: interest earned by the balance of the fund and employer contributions.

At bottom, the board's interpretation of ORS 238.260(6) removes from that statute the phrase "from interest earned." The board erred in doing that and thereby erred in concluding that the Variable Account was required in 2001

---

[8] ORS 238.260(2) provides that "[t]here is established in the Public Employees Retirement Fund an account, separate and distinct from the [state] General Fund, to be known as the Variable Annuity Account."

and 2002 to pay a pro rata share of PERS administrative expenses from principal rather than from interest.[9]

Reversed and remanded for reconsideration.

.

---

[9] We recognize that the applicable statutes create the prospect that accounts within the fund other than the Variable Account may be required to pay more than their pro rata share of PERS administrative expenses. We also appreciate that the board's interpretation of the statutes avoids that incongruity in treatment between the Variable Account and the other accounts. Nevertheless, the statutes, as enacted, cannot be interpreted to avoid the incongruity.