Argued and submitted July 23, 2012, affirmed February 6, petition for review denied May 30, 2013 (353 Or 714)

Stephen R. TOPAZ,
*Petitioner,*

*v.*

OREGON BOARD OF EXAMINERS FOR
ENGINEERING AND LAND SURVEYING,
*Respondent.*

Agency/Board/Other
1001928; A148844

297 P3d 498

Gary M. Bullock argued the cause for petitioner. With him on the brief were Eric S. Postma and Gary M. Bullock

and Associates, P.C. With him on the reply brief was Gary M. Bullock and Associates, P.C.

Carolyn Alexander, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner seeks judicial review of a final order of the Oregon Board of Examiners for Engineering and Land Surveying (board) imposing a $350 civil penalty for engaging in the practice of engineering without an Oregon license in violation of ORS 672.007(1) and ORS 672.045(2).[1] On review, petitioner challenges the board's conclusion that he practiced engineering without a license by signing a complaint letter to the board with the designation "P.E.," which is an abbreviation for "professional engineer," after his name. For the reasons that follow, we affirm.

We take the facts from the board's order supplemented by the undisputed facts in the record. Petitioner has a mechanical engineering degree and technical training in electrical engineering, but he has never registered as a professional engineer in Oregon. He was actively licensed as a professional engineer in Maryland from 1961 through 1986. He was not licensed in Maryland, or in any other state, from 1986 until September 2010, when his Maryland license was reinstated.

In June 2009, petitioner sent a letter of complaint to the board, alleging that the engineering department for the City of St. Helens, the city he lives in, caused water damage to his home because of the city's sanitary sewer rehabilitation project. He signed the letter with his name, followed by the designation P.E., which stands for "professional engineer." He was not licensed as a professional engineer in Oregon or in any other state when he sent the letter of complaint to the board. In the letter, petitioner described at length, and in vivid detail, the drainage problem that the city had created and explained that the city was not providing an alternate removal system for the storm water or sump pump drainage. He included with his letter, a detailed statistical analysis of the problem and maps of his and surrounding properties. He concluded the letter by proposing two possible remedies to prevent flooding on his property.

---

[1] The three relevant statutes in this opinion, ORS 672.007, ORS 672.045, and ORS 672.060, were amended in 2009, after petitioner's violations. *See* Or Laws 2009, ch 259, §§ 2, 4, 6; Or Laws 2009, ch 260, § 1. Accordingly, all references in this opinion are to the 2007 versions of those statutes.

Following receipt of the letter, the board issued a Notice of Intent to Assess Civil Penalty and proposed a $1,000 civil penalty. The board alleged that petitioner's act of signing the complaint letter with the designation P.E. constituted the practice of engineering, in violation of ORS 672.007(1)(a) and (c) and ORS 672.045(2)—statutes defining and prohibiting falsely representing the authority to practice engineering. In part, ORS 672.045(2) prohibits a person from "[f]alsely represent[ing], by any means, that the person is authorized to practice engineering or land surveying." "Practicing engineering" is defined in ORS 672.007(1), which provides in part:

"[A] person shall be considered practicing or offering to practice engineering who:

"(a) By verbal claim, sign, advertisement, letterhead, card or in any other way implies that the person is or purports to be a registered professional engineer;

"* * * * *

"(c) Purports to be able to perform, or who does perform, any service or work that is defined by ORS 672.005[2] as the practice of engineering."

In other words, the board alleged that petitioner, without an Oregon engineering license, implied that he was a registered engineer or purported to be able to practice engineering.

Petitioner sent an answer to the notice, in which he contended that he was a professional engineer licensed in Maryland and that his letter did not violate ORS 672.007 or ORS 572.045. He also stated that he sent the letter "in hopes that it might be easier to receive a response with

---

[2] ORS 672.005 provides, in part:

"(1) 'Practice of engineering' or 'practice of professional engineering' means doing any of the following:

"(a) Performing any professional service or creative work requiring engineering education, training and experience.

"(b) Applying special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, testimony, evaluation, planning, design and services during construction, manufacture or fabrication for the purpose of ensuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works or projects."

some action from [the board] if they determined that he had some professional training and knowledge relating to the issues in question."

Petitioner requested a hearing and the case was assigned to an administrative law judge (ALJ). Both petitioner and the board filed motions for summary determination. Petitioner argued, among other things, that even if his conduct violated ORS 672.007 and ORS 672.045, his actions fell within the exceptions under ORS 672.060(5), which allows a person to practice engineering if it only affects that person's property, and ORS 672.060(6), which allows a person to practice engineering incidental to his or her personal work and if not offered directly to the public.

In response to the board's motion for summary determination, petitioner argued, among other things, that other states have changed their policy regarding P.E. designations. Specifically, he identified the Texas Board of Engineers, which "recognized that such prohibitions raised first amendment and commercial speech issues." He attached to his response an advisory opinion from the Texas Board of Engineers that stated that it had decided to amend its own rule because "there are first amendment legal arguments based on 'commercial speech' that exist." Neither the advisory opinion nor petitioner cited any legal authority to explain what those issues were.

The ALJ issued an order dismissing the notice and concluded that petitioner did not violate any statutes. In doing so, the ALJ reasoned that petitioner had appended P.E. to his name in error and out of force of habit after several decades of being an engineer in Maryland. The ALJ also reasoned that the error caused no harm and, because petitioner was an engineer by education, he was holding himself out as a registered professional engineer in some other jurisdiction besides Oregon. Even if petitioner was practicing engineering, the ALJ concluded, his actions fell within the exception in ORS 672.060(5) because his conduct affected his own property. The ALJ's order did not address the exemption under ORS 672.060(6) allowing engineering work that is not offered directly to the public.

The board issued an amended proposed order that concluded that petitioner had violated ORS 672.007(1)(a) and (c) and ORS 672.045(2), but it reduced the proposed $1,000 civil penalty to $350. Petitioner filed exceptions to the amended proposed order and again argued, among other things, that the board had failed to consider his argument that an automatic violation for using the title P.E. triggers First Amendment issues. The only authority petitioner cited was the same advisory opinion from the Texas Board of Professional Engineers, and he again did not explain his constitutional contention and did not cite any case law or other legal authority. Petitioner also argued that the ALJ was correct in concluding that his conduct was exempt under ORS 672.060(5) because the engineering work affected his property exclusively. Unlike before, he did not argue that he was exempt under ORS 672.060(6) (an individual is exempt from a violation if "engineering work is not offered directly to the public").

After considering petitioner's written exceptions, the board then issued its final order and determined that, by using the title P.E., petitioner implied that he was a registered professional engineer in violation of ORS 672.007(1)(a) and purported to be able to perform engineering work in violation of ORS 672.007(1)(c). In addition, the board determined that petitioner falsely represented that he was a professional engineer in violation of ORS 672.045(2). The board also determined that petitioner's conduct did not fall within the exception in ORS 672.060(5). In making that determination, the board reasoned that petitioner's conduct in purporting to be an engineer did not exclusively affect his property, as the statutory exception requires, but "was for the purpose of instigating an investigation into activities of the City of St. Helens and involved public utilities, agencies, and other privately owned lands." The board disagreed with the ALJ's legal conclusion that, because petitioner's use of the P.E. designation was a mistake, it was lawful. Instead, the board concluded that there is no *mens rea* requirement for violations in ORS chapter 672. However, the board reasoned that intent may be used to mitigate the penalty from $1,000 to $350.

Petitioner seeks judicial review and raises three assignments of error.[3] His first two assignments of error challenge the board's conclusion that he practiced engineering and contain four arguments. First, petitioner argues, for the first time on review, that ORS 672.007 is a definitional statute—it only defines the practice of engineering and does not proscribe its practice—and accordingly, he asserts that he cannot violate a definition. We do not read the order to state that petitioner violated a definitional statute, but even if petitioner's reading were correct, we would decline to address the issue. *See Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 199-200, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005) (declining to address unpreserved issue on judicial review of agency order). We find petitioner's three remaining arguments to be unpersuasive and address each argument in turn.

We review the board's legal conclusions, including its interpretation of a statute, for legal error. ORS 183.482(8)(a). When reviewing an agency's interpretation of a statute, our first task is "to discern the legislature's intent, looking primarily to the text of the statutes in context." *Murray v. PERB*, 235 Or App 262, 268, 230 P3d 993, *rev den*, 349 Or 173 (2010) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)).

We first address petitioner's argument that ORS 672.045 has a *mens rea* requirement, contrary to the board's conclusion. Under ORS 672.045(2), a person may not "[f]alsely represent, by any means, that the person is authorized to practice engineering * * *." Petitioner argues

---

[3] Petitioner requests that we review *de novo* the board's modification of two of the ALJ's findings of historical fact. The ALJ found that petitioner was "inactive" from 1986 to 2010, rather than not licensed. The ALJ also found that petitioner included "P.E." after his name by force of habit, but the board modified that statement, finding that he "later stated" that he included "P.E." by force of habit. When a petitioner requests *de novo* review of an agency's modification of historical facts, the court must determine whether the modification was error as unsupported by a preponderance of evidence. *Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 204, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005). After reviewing the record, we conclude that the board's findings were supported by a preponderance of evidence, including information from the Maryland Board of Engineering that he was "not licensed" and petitioner's admission that he sent the complaint letter with the hope that the board would listen to someone like him with professional training.

that, because the legislature decided to use the word "falsely," it intended to require an intentional deception to violate the statute. Petitioner relies on *State v. Leonard*, 73 Or 451, 470, 144 P 113, *on reh'g*, 144 P 681 (1914), where the Supreme Court stated that "false" in a criminal statute implies "an intention to perpetuate some treachery or fraud." Thus, according to petitioner, the legislature's use of the word "falsely" implies an intention to perpetuate a fraud.

We disagree with petitioner's position for two reasons. First, were we to assume, hypothetically, that petitioner is correct that ORS 672.045 is a criminal statute, his reliance on *Leonard*, a criminal case predating the revised criminal code, would be misplaced. As part of the revised criminal code in 1971, the legislature enacted ORS 161.105, which exempts violations from requiring culpable mental states unless the statute expressly includes one. Or Laws 1971, ch 743, § 9. A violation is an offense where the penalty is a fine and not imprisonment. ORS 153.008. Violating a provision in ORS 672.002 to 672.325 carries a $1,000 civil penalty with no imprisonment. ORS 672.325. At most, violating ORS 672.045 would constitute a violation and would not require proof of a culpable mental state.

Second, our case law indicates that, had the legislature intended to include a culpable mental state in regulatory statutes, it would have done so. In *Pierce v. Dept. of Public Safety Standards*, 196 Or App 190, 100 P3d 1125 (2004), we held that a regulatory statute denying police certification if an applicant "falsified" any information on the application did not require a "specific and heightened mental state such as intent to deceive." *Id.* at 196 (internal quotation marks omitted). We explained that, "as a matter of plain meaning and common usage, 'to falsify' can refer to the mere act of making a false or erroneous representation or it can refer to doing so with a particular mental state, such as deliberately or intentionally." *Id.* at 194. "An examination of [other] statutes reveals that the legislature knows how to specify a heightened mental state when it intends one and, in addition, that the legislature frequently does so. That is true whether the required mental state is knowledge, intent, deliberateness, or willfulness." *Id.* at 195. For example,

ORS 342.175(1)(e) allows the Teacher Standards and Practices Commission to suspend or revoke a teaching license if the licensee made "any false statement knowingly" on the license application. Thus, we concluded that the legislature's omission of a specific mental state demonstrated its intent not to require a culpable mental state for committing the act. *Id.* at 196.

By its express terms, ORS 672.045 prohibits a person from "falsely represent[ing]" that the person is a registered engineer. The dictionary defines "false," in part, to mean "not corresponding to truth or reality : not true : ERRONEOUS, INCORRECT," which suggests that there is no mental state requirement as petitioner suggests. *Webster's Third New Int'l Dictionary* 819 (unabridged ed 2002). However, the dictionary also defines the term to mean "intentionally untrue : LYING." *Id.* Thus, the plain meaning of "false" does not reveal whether the legislature intended to include a culpable mental state. The statute, like the one in *Pierce*, neither includes nor excludes a culpability requirement. Had the legislature intended to require a heightened mental state, it would have provided one in less ambiguous terms than the word "falsely." Under the circumstances, the legislature's failure to include a clear reference to a mental state is telling, as it was in *Pierce*. Petitioner has not produced, and we have not found, any legislative history to suggest that the legislature intended to attach a *mens rea* requirement to its prohibition on falsely representing the ability to practice engineering. Accordingly, we conclude that ORS 672.045 does not require the board to prove a heightened culpable mental state.

We turn to petitioner's third argument challenging the board's conclusion that he practiced engineering, as defined by ORS 672.007(1). That statute requires the board to prove that he "purported" or "implied" that he was a registered professional engineer, and petitioner argues that he did neither. Instead, he asserts that he mistakenly included the P.E. designation out of force of habit.

Petitioner's argument is not well taken. The board concluded that petitioner's use of "P.E." in his complaint to the board constituted a false representation that he was

authorized to practice engineering. Whether petitioner mistakenly included the P.E. designation after his name is of no import because, as we have concluded above, there is no *mens rea* requirement. Petitioner's use of the designation fits the definition of practicing engineering under ORS 672.007(1)(a) and (c). As provided in ORS 672.007(1)(a), a person is practicing engineering if the person, "in any other way implies that the person is * * * a registered professional engineer." Additionally, ORS 672.007(1)(c) provides that a person is practicing engineering if that person "[p]urports to be able to perform, or who does perform, any service or work that is defined by ORS 672.005 as the practice of engineering." Petitioner does not dispute that P.E. is an abbreviation for professional engineer. By using that designation, petitioner implied that he was a professional engineer and purported that he could perform engineering work, such as evaluating the City of St. Helens's sewer system. Petitioner admits that he did not have a license to practice engineering in Oregon. Thus, by using the P.E. designation, he "falsely represented," in violation of ORS 672.045, that he was authorized to practice engineering. Accordingly, we conclude that the board's determination that petitioner violated ORS 672.045 and ORS 672.007 was supported by substantial evidence and substantial reason.

Finally, petitioner argues that he is exempt from the penalties because his conduct fell within two statutory exceptions for engineering exclusively on his own property and for engineering that is not offered directly to the public. Those two exceptions are found in ORS 672.060(5) and (6), which exempt:

"(5) An individual, firm, partnership or corporation practicing engineering or land surveying:

"(a) *On property owned* or leased by the individual, * * *; *and*

"(b) That *affects exclusively the property or interests of the individual,* * * * unless the safety or health of the public, including employees and visitors, is involved.

"(6) The performance of engineering work by a person, * * * provided:

"(a) The work is in connection with or incidental to the operations of the persons, * * * and

"(b) The *engineering work is not offered directly to the public.*"

(Emphasis added.) In simplified terms, to fall within the exception under ORS 672.060(5), a person must practice engineering on his own property and affect exclusively that property, and the person cannot affect the safety or health of the public, including visitors to the property. For the exception under ORS 672.060(6) to apply, the engineering work must be in connection to the person and cannot be offered directly to the public. We address each subsection in turn.

Petitioner first argues that subsection (5) applies to him because the letter he wrote to the board concerned only damage to his property, so the safety or health of the public was not involved in the contents of his letter. In addition, he contends that the contents of the letter are not at issue in this case, but only his inclusion of the P.E. designation after his name. The board responds that petitioner's letter, in which he purported to be a professional engineer, was sent to the board, a public agency, for the purpose of instigating an investigation of the engineering activities of the City of St. Helens. The board concludes that petitioner's act of sending a complaint letter to the board did not affect exclusively his property.

The board has the better argument. Petitioner cannot divorce his use of the P.E. designation from the contents of his letter. By sending the complaint letter with the P.E. designation to the board, he represented to the board that the letter contained the opinion of a registered professional engineer and described in vivid technical detail the drainage problem that the city had created, included a detailed statistical analysis of the problem, and proposed two possible engineering solutions. Indeed, he admitted in his answer to the board that he had sent the letter "in hopes that it might be easier to receive a response with some action from [the board] if [the board] determined that he had some professional training and knowledge relating to the issues in question." The act of sending the letter,

containing professional engineering advice, to a public agency constituted practicing engineering outside of his property. In addition, by complaining to the board about the city, his conduct affected not only his property, but also the city's sewer system (which presumably would have affected his neighbors), and the city's engineers. Therefore, the board did not err when it concluded that the exception to practicing engineering found in ORS 672.060(5) did not apply to petitioner.

As to the exception for engineering work not offered directly to the public under ORS 672.060(6),[4] we have held that an engineering proposal made to a public agency is a submission "made directly to the public." *Becklin*, 195 Or App at 209-10. In that case, the petitioner, who was not a registered engineer, submitted an engineering proposal to the National Marine Fisheries Service, a public agency. We concluded that the submission was sufficient for the petitioner to offer work "directly to the public." *Id*. at 210. In this case, petitioner sent a letter purporting to be a professional engineer to the board, which is a public agency. In addition, as we discussed above, petitioner was essentially attempting to offer his professional opinion as an engineer to the board to persuade it to investigate the City of St. Helens's engineers. In other words, he offered his engineering expertise "directly to the public." Therefore, we conclude that petitioner was not entitled to the exception under ORS 672.060(6), and we reject his first and second assignments of error.

In petitioner's third assignment of error, he argues that the board's interpretation of ORS 672.007 and ORS 672.045(2) to restrict the use of the P.E. designation violates the First Amendment's protections of commercial speech. Petitioner relies on *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 US 557, 566, 100 S Ct 2343, 65 L Ed 2d 341 (1980), in which the United States Supreme Court announced a four-part test to determine whether commercial

---

[4] The board argues that petitioner failed to preserve this issue by making an exception to the board's amended proposed order. We reject the board's preservation argument because petitioner raised this issue before the ALJ. *See, e.g., Becklin*, 195 Or App at 198, 209 (rejecting the board's preservation argument when petitioner "plainly placed in issue whether the statutory exemptions apply to him" even though petitioner did not file exceptions to the amended proposed order).

speech is protected under the First Amendment. The board responds that petitioner did not preserve his argument for review, and we agree.

This court will generally not consider an unpreserved issue on judicial review of an administrative agency's order because, had the issue been brought to the agency's attention, the agency may have been able to correct or remedy any error. *BWK, Inc. v. Dept. of Admin. Services*, 231 Or App 214, 221, 218 P3d 156 (2009), *rev den*, 347 Or 718 (2010); *see* ORAP 5.45(1) (providing that the Court of Appeals generally does not consider an issue on appeal unless the issue was preserved in the lower court); *Baker v. DMV*, 201 Or App 310, 313, 118 P3d 852 (2005) ("The rules of preservation apply on judicial review of administrative agency orders."). "Merely citing a case or a constitutional provision is not sufficient" to preserve a claim of error on appeal. *State v. Toste*, 196 Or App 11, 16, 100 P3d 738 (2004), *rev den*, 338 Or 57 (2005).

In this case, petitioner made vague references to commercial free speech. Petitioner filed a reply to the board's motion for summary determination and argued that other states, specifically Texas, have amended their policy concerning prohibitions on the use of the P.E. designation because "such prohibitions raised first amendment and commercial speech issues." Petitioner did not develop that argument any further in his reply, other than including, as an exhibit, the Texas Board of Professional Engineers Policy Advisory Opinion that stated that "there are first amendment legal arguments based on 'commercial speech' that exist." That opinion did not cite any legal authority. After the ALJ issued the proposed order and the board issued its amended proposed order, petitioner filed an exception, contending that the board failed to consider his argument that "an automatic violation by use of the term PE has topical and noteworthy first amendment and commercial speech issues." Petitioner explained that the Texas board changed its policy regarding use of the P.E. designation because its policy raised First Amendment and commercial speech issues. Again, though, petitioner did not elaborate further on specifically how the board's order violated petitioner's First Amendment rights,

and he did not cite *Central Hudson*'s four-part test. Based on those facts, we conclude that he did not adequately develop his argument that the statutes in question violated his First Amendment rights. Had he presented that issue and provided legal authority to support his contention to the board, it may have been able to address his concerns. Because petitioner's third assignment of error was not preserved, we decline to address it.

Affirmed.